IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-441-FL

| | | |
|---|---|---|
| ROBIN A. CLINTON, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-23, DE-27] pursuant to Fed. R. Civ. P. 12(c). Claimant Robin A. Clinton ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 3 July 2007, alleging disability beginning 13 April 2006. (R. 8). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 14 December 2009, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 18-49). On 27 January 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 5-17). On 25 August 2010, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

**STANDARD OF REVIEW**

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; and (2) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 7, 10.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 10). Next, the ALJ determined Claimant had a severe impairment of "residuals from left ankle fracture." *Id.* However, at step three, the ALJ concluded this impairment neither met nor equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work.[1] (R. 11). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 12). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a quality control clerk, receptionist, sales clerk and a general clerk. (R. 15).

### II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old and unemployed. (R. 21-22). Claimant has an undergraduate degree in Biology. (R. 22). Claimant was last employed as a quality assurance associate for a pharmaceutical company but stopped working due to injuries sustained to her left side and lower back as a result of a slip and fall incident at work. (R. 22, 29).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Claimant testified that she is unable to work due to neck pain, severe low back pain accompanied by burning and swelling in the middle portion her back, weakness, tingling and numbness in her left leg, numbness and tingling in her left foot and depression. (R. 29-31). Claimant stated that if she bends forward too much, she experiences pain down the center of her back and along her left side. (R. 32). Claimant testified that she has a tendency to fall as the tingling and numbness in her left leg causes the leg to give out. (R. 32). Claimant testified that she relies on a cane, prescribed by both her orthopaedic surgeon and her primary care physician, when out in public. (R. 32). Claimant stated her foot pain "hurts so bad until it feels like it's coming apart." (R. 32). Claimant stated her pain is aggravated by changes in the weather. (R. 33). Claimant's pain medications include epidural injections, Skelaxin, Tramadol, Flexeril and Lortab. (R. 34-35).

Claimant also experiences fatigue, memory loss, forgetfulness, concentration difficulties and crying spells. (R. 33-34). Claimant testified that there are days where she does not get dressed because she is drained and tired. (R. 34). Claimant testified that she does not wish to socialize with others as she becomes agitated quickly. (R. 37). Claimant takes Cymbalta for her depression. (R. 34). Claimant has not undergone any mental health treatment. (R. 38-39).

Claimant testified that she could stand for 15 to 20 minutes with a cane, sit for 10 to 15 minutes and walk "a couple of feet." (R. 36). Claimant stated that she cannot bend, stoop or squat. (R. 37). Claimant testified the she spends her entire day changing positions in an attempt to get comfortable. (R. 42). Claimant testified that she lays down for 3 to 4 hours a day, reads and watches television "sometimes," does not cook or go grocery shopping and does not socialize. (R. 36-37, 41-42). Claimant does not drive because of her back pain. (R. 29-30).

## III. Vocational Expert's Testimony at the Administrative Hearing

Melissa Stewart testified as a VE at the administrative hearing. (R. 44-47). After the VE's testimony regarding Claimant's past work experience (R. 44), the ALJ asked the VE to assume a hypothetical individual of the same age and prior work experience as Claimant with a high school education and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual had the physical capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for at least six hours in an eight-hour workday. (R. 45). The VE responded in the affirmative, stating the individual could perform all of Claimant's past relevant work which includes quality control clerk (DOT #229.587-014); receptionist (DOT #237.367-038); sales clerk (DOT #290.477-014); and general clerk (DOT #209.562-010). Second, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual had the physical capacity to occasionally lift 10 pounds, sit for up to 30 minutes at a time for about six hours during an eight-hour work day, stand and walk for 15 minutes at a time for two hours during an eight-hour work day but could not bend, stoop or squat. (R. 46). The VE testified the individual could perform the receptionist position only. *Id.* The VE testified further that if the above hypothetical individuals were required to use a cane, they would not be able to perform past relevant work. (R. 47). Finally, the ALJ asked whether the individual in hypothetical two could perform Claimant's past relevant work as a receptionist if the individual had to lie down at least twice a day in order to relieve pain. (R. 46). The VE responded in the negative and testified further that no other jobs would be available if an individual need to lie down at least twice a day. *Id.* The VE testified that her testimony was consistent with the DOT. *Id.*

## DISCUSSION

### I. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 10. This court agrees.

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his or her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR

LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints, including back and neck pain, back weakness, tingling and numbness in her legs and neck, agitation around people and crying spells. (R. 12). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 12). In reaching this conclusion, the ALJ reasoned as follows: (1) Claimant's physical examinations and diagnostic testing were generally negative and her medical records reveal no significant anatomical structural deformities (R. 181, 191,193,196, 205, 320, 355, 359, 364, 424-25); (2) the lack of evidence of a change in motor tone or bulk or other change in body habitus or constitutional appearance, "which might be expected in a person whose activities are markedly restricted due to a debilitating disease process;" and (3) the lack of total restrictions placed on Claimant by treating physicians and a recommendation by a treating physician that Claimant perform light duty work only (R. 181). (R. 15); *see Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (recognizing that a lack of physical restrictions can constitute substantial evidence for a finding of non-disability). In discussing the medical evidence, the ALJ acknowledged that Claimant had participated in physical therapy (R. 185, 337), received steroid injections and tried a TENS unit. (R. 12-13, 185, 210, 337).

Claimant argues that the "medical evidence and [her] testimony show that she is unable to perform work at any exertional capacity and is disabled." Pl.'s Mem. at 11. The court finds Claimant's restatement of her testimony that she is on several medications, repositions herself several times throughout the day to alleviate back pain, lies down three to four hours each day and is restricted as to how long she can sit and walk (testimony acknowledged by the ALJ) is simply an

appeal for the court to impermissibly substitute its judgment for the ALJ. However, the court notes that the ALJ ignored objective medical evidence supporting Claimant's testimony regarding her reliance on a cane. (R. 296). In particular, in summarizing Claimant's testimony, the ALJ acknowledged Claimant's statement that she relies on a cane when out in public; however, the ALJ failed to address the 11 September 2008 prescription of a "walking cane" by Felicia Hussey, M.D., Claimant's treating physician. (R. 12, 296). The ALJ may not ignore evidence weighing against his decision. *See Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) (explaining the ALJ "cannot 'pick and choose' only the evidence that supports his position"); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The Commissioner argues Dr. Hussey's treatment notes describing Claimant as ambulating without the assistance of a cane belie Claimant's actual need for a cane. *See* Def.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Def.'s Mem.") at 17. First, those records cited by the Commissioner in its brief predate Dr. Hussey's prescription. (R. 272, 299, 301). Fundamentally, however, the court may not entertain the Commissioner's request to undertake examination and weight of Dr. Hussey's records, because the ALJ has failed to consider Dr. Hussey's treatment records in total. *See Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) (explaining a court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]") (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947)). The Commissioner argues further that Claimant's prescription for a cane is irrelevant in light of a January 2008 consultative examination performed by Dr. Okoye who noted that Claimant "requires no assistive device for ambulation." Def.'s Mem. at 17; (R. 241).

However, Dr. Okoye's examination of Claimant pre-dates Dr. Hussey's September 2008 prescription. (R. 241, 296).

The court notes that medical records subsequent to September 2008 from (1) a physician's assistant ("PA") with Goldsboro Pain Medicine ("GPM"), (2) Daniel Poole, M.D., with Eastern Medical Associates, P.A., and (3) J. Gregg Hardy, M.D., with East Carolina Neurology do not mention Claimant's use of cane, the implication of which is that the ALJ's error is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Barnes v. Astrue*, No. 5:10-CV-189-FL, 2011 U.S. Dist. LEXIS 49016, at *9, 2011 WL 1755942, at *3 (E.D.N.C. May 6, 2011) ("A remand is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal quotations and citation omitted). As the ALJ observed, in a January 2009 medical record, Dr. Poole noted Claimant's coordination, balance and gait were normal (R. 13, 355) – a finding identical to that of Dr. Hardy during a 1 September 2009 examination of Claimant. (R. 14, 240, 427). Also, a PA with GPM noted during a January 2009 examination that Claimant had "an antalgic gait that normalizes after several steps" (R. 322) and subsequent progress records from GPM note that Claimant reported walking at home on a regular basis and make no mention of Claimant's alleged reliance on a cane.[2] (R. 391-93).

Although the medical record in support of the Commissioner is significant, to rule that the ALJ's error is harmless would require this court to weigh the impact of a medical record supportive

[2] While the ALJ does not specifically reference these pages in his decision, he acknowledges that Claimant received treatment from GPM for the period May 2006 through August 2009. (R. 13).

of disability and unrecognized by the ALJ against medical evidence the ALJ recognized supporting his conclusion. The court observes further that while the VE testified that a hypothetical individual with the same age, education and work experience as Claimant could perform either all of Claimant's past relevant work or only that of receptionist, depending on the functional limitations imposed thereon, the VE stated that the individual could not perform any of Claimant's past relevant work if the individual required the use of a cane. (R. 45, 47). As such, the court finds the prescribed cane arguably has some bearing on the ALJ's analysis and the court is prohibited from substituting its judgment for that of the ALJ as to the weight of the ignored evidence. *See Mastro*, 270 F.3d at 176. Accordingly, the court cannot find that the ALJ's credibility finding is supported by substantial evidence. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (remand is appropriate where ALJ fails to discuss relevant evidence weighing against his decision) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). Because this court finds that remand on the issue of credibility will affect the RFC assignment of error raised by Claimant, it does not address that argument.

**CONCLUSION**

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-23] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-#27] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 12th day of July, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge